STATE OF NORTH CAROLINA v. LEROY KILLIAN

No. 7226SC177

(Filed 24 May 1972)

1. Burglary and Unlawful Breakings § 5; Larceny § 7—breaking and entering — larceny — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution for felonious breaking and entering and felonious larceny where it tended to show that the State's witness left two women in his extra apartment along with his wife's wedding rings, that when officers went to the apartment the back door was locked, a glass panel in the door was broken and broken glass and a broken bottle were lying outside the door, that blood and defendant's fingerprints were on the broken glass and bottle, that when an officer entered the apartment defendant jumped out a window and fled, that the two women left in the apartment were found in the apartment nude, that when apprehended defendant had the wedding rings on his person, that defendant did not have permission of the State's witness to enter his apartment, and that defendant's arm was cut.

2. Larceny § 7; Indictment and Warrant § 17—variance — ownership of stolen property — person in lawful possession

There is no fatal variance where an indictment charges larceny of property from a specified person and the evidence discloses that such person was not the owner but was in lawful possession at the time of the offense.

Judge BROCK dissenting.

APPEAL by defendant from *Friday, Judge,* 4 October 1971 "A" Criminal Session of Superior Court held in MECKLENBURG County.

The defendant was charged in a two count bill of indictment proper in form with feloniously breaking and entering and larceny from the apartment of John Crowell, 2322-B Horne Drive, Charlotte, North Carolina.

The State offered evidence tending to show that on 1 April 1971 John Crowell lived with his wife at 3320 Barfield Drive, Charlotte, North Carolina, and in addition to his residence rented an apartment, 2322-B Horne Drive, Charlotte, North Carolina. At about 5 p.m. he went to the Horne Drive apartment with two women who stayed at the apartment when he left at 5:45 p.m. Earlier that day he had loaned his wife's wedding rings to one Nathaniel Phifer, and when he left, the rings were in the apartment. Crowell returned to the apartment at about 6:15 p.m. and

found "four or five cars of police," and the defendant was in their custody. Crowell testified:

> "* * * Detective Miller took me out to the car and asked me did I know this fellow and I told them 'No' and they searched him and they come out with my wife's rings.
>
> * * *"

Crowell had not given the defendant permission to enter his apartment.

At about 6:00 p.m. on 1 April 1971, Officers Miller and Swain went to John Crowell's apartment at 2322-B Horne Drive. When they arrived they first talked to a neighbor at 2322-A Horne Drive. The back door of Crowell's apartment was locked. A glass panel in the door was broken and broken glass and a broken bottle were lying outside the door. What appeared to the officer to be blood was on the broken glass and bottle. Officer Miller testified:

> "After I observed the bottle I reached and turned the knob and started to open the door. The door was kicked shut or slammed shut by someone. I stepped back and kicked the door open with my foot. * * * "

When the Officer went inside he saw the defendant walking away from the door. The defendant ran into a bedroom, jumped on a bed, and leaped out a window. Officers Miller and Swain pursued the defendant for 25-30 minutes before he was apprehended. When the defendant was searched, the rings, identified by John Crowell, were found. The defendant's arm was cut.

The defendant's fingerprints were on the bottle and glass found at the back door. The two women taken to and left in the apartment by John Crowell were found in the apartment nude.

The defendant offered no evidence. The jury found the defendant guilty, and from a judgment of imprisonment the defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General Robert G. Webb for the State.*

*James J. Caldwell for defendant appellant.*

HEDRICK, Judge.

[1] The defendant assigns as error the Court's denial of his timely motion for judgment as of nonsuit. Although the evidence in this case reveals a rather bizarre situation, we think it sufficient to require the submission of the case to the jury and to support the verdict.

[2] The defendant contends:

". . . (T)he Court erred in denying defendant's motion in arrest of judgment as pronounced in this case because of a material variance in the bill of indictment and the proof of ownership of property alleged stolen."

In *State v. Cotten*, 2 N.C. App. 305, 163 S.E. 2d 100 (1968), it is said:

"The fact that an indictment charges a defendant with larceny of property from a specified person and the evidence discloses that such person is not the owner but is in lawful possession at the time of the offense, does not render the indictment invalid. There is no fatal variance, since the unlawful taking from the person in lawful custody and control of the property is sufficient to support the charge of larceny. *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165."

This assignment of error is not sustained.

We hold the defendant had a fair trial free from prejudicial error.

Judge VAUGHN concurs.

Judge BROCK dissents.

Judge BROCK dissenting.

The State's witness John Crowell left two women in his extra apartment along with his wife's wedding rings. Ostensibly he left them in charge of the apartment and its contents, including his wife's wedding rings. After that he does not know what happened and the State's evidence does not enlighten us. The broken glass bottle and door pane are suspicious circumstances particularly when defendant's prints were found on the

State v. Killian

neck of the broken bottle. The legitimate inference from that evidence is that defendant was apparently holding the bottle at the time when it was broken. When viewed with the other circumstances, it seems significant that the glass from the door pane and the bottle were lying on the outside of the door instead of having fallen inward.

. It seems significant that the two nude women in the apartment with defendant were making no outcry or protest so far as the evidence discloses. It seems significant that the wedding rings were not picked up by defendant when he ran through the bedroom in an effort to elude the police. The inference from the evidence is that he was in the bedrom with the two nude women at some time before the police arrived and that he acquired possession of the rings in a manner and for a reason not explained. The State did not see fit to call as witnesses the two women who were in position to know what happened.

It seems to me that the more reasonable inference from this evidence is that the two women for some reason invited defendant into the apartment and for some reason allowed defendant to obtain possession of the rings.

The bizarre circumstances created by the extra activities of State's witness John Crowell led one to believe that all was not well with the use of his extra apartment at 2322-B Horne Drive. However, I feel that the State fell short of establishing a *prima facie* case of breaking or unlawfully entering, or of larceny against defendant. It seems to me that defendant's flight through the top sash of the bedroom window and his extended footrace with the police are the most damaging evidence against him. But, they prove nothing except that defendant was up to something that he did not want to discuss with the police.